## THE TOURIST NO. 2.

### LIISANANTTI v. ASTORIA NORTH BEACH FERRY CO. et al.
#### No. 7006.

Circuit Court of Appeals, Ninth Circuit.
April 24, 1933.

Loyal H. McCarthy, of Portland, Or., for appellant.

James L. Hope, of Astoria, Or., and Erskine Wood and Gunther F. Krause, both of Portland, Or., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellant brought this libel to recover damages for personal injuries sustained by him and for damages to his fish net, incurred when the ferryboat Tourist No. 2 ran over his fish net in the waters of the Columbia river. By agreement of the parties the District Court referred the case to a commissioner to "receive evidence, make findings of fact and draw conclusions of law on all issues disclosed by the pleadings referred herewith and recommend to the court a decree to be entered thereon, all to be delivered to, received in and finally passed upon by this court. Said Commissioner is authorized and empowered to do all things and to make such orders as may be required to accomplish a full hearing on all issues of fact and law in this cause and the exceptions of the parties to the rulings, findings, conclusions and recommendations of said Commissioner are reserved."

The court adopted the report of the commissioner as its findings of fact and conclusions of law, and dismissed the libel, followed by this appeal.

The facts as reported by the commissioner, and so far as they are not in dispute, are substantially as follows:

The month of August is generally the height of the fishing season on the Columbia river, and hundreds of fishermen are then engaged in gill netting on that river. A gill netter works from a small boat and lays a net of about 250 fathoms in length. One end of this net is attached to the boat and the other floats freely in the water, having at its end a buoy which at night bears a light. The net is supported in the water by corks or small floats. Quite often during the fishing season ferries plying the river run over the nets of these fishermen, because of their numbers and the fact that they drift across the course of the ferry boats. To avoid doing unnecessary damage, upon coming to a net the ferry stops its engines and drifts across the net.

There are two well-recognized ship channels at this point in the Columbia river. The main ship channel lies on the south side of

the river, and what is known as the north ship channel lies along the Washington shore.

On the night of August 23, 1929, between 10 and 11 o'clock, libelant was engaged in gill net fishing in the waters of the Columbia river, off the Washington shore, at a point between Point Ellice and McGowan, Wash., near a location known as Nelson's fish trap. The weather was clear, and the water was calm and smooth. On the same night the ferryboat Tourist No. 2 was navigating the waters of the Columbia river on a trip from Astoria, Or., to the Washington side, under the command of respondent Elfving, its master. The course pursued by the ferry, the location of libelant's boat, the cause of the accident, and the negligence charged, are described as follows in the libel: "While the libelant was in charge of his gill net in the waters near the mouth of the Columbia River, at a point on the north side of the north channel of said river, and greatly in excess of 150 feet southeasterly from the fish trap known as Nelson's fish trap, the respondent, in charge of its master, F. S. Elfving, while engaged in a pleasure excursion trip, was proceeding in a westerly direction toward the ocean, and passed between libelant and said fish trap, within 75 feet of libelant and where libelant was in plain view, and after proceeding in its course toward the ocean for a period of approximately seven minutes, turned around and retraced its course upstream, until within about 50 feet of libelant's net, which said net extended outwardly and downstream from libelant's boat, at which time said ferry boat was negligently, recklessly and maliciously changed in its course so as to go directly over libelant's net, and without stopping its engines, and in so crossing said net caught the same upon the propeller of said boat at a time when libelant was picking up his net, thereby tearing and damaging said net, and severely injuring the hand, arms and shoulders of libelant by the sudden jerking and pulling of said net, and thereby pulling libelant against the side of his own boat."

The commissioner found that libelant had "laid out his net in an unusual manner; that its position was such that its presence could not be readily observed; that it obstructed the channel; that the master of the Tourist No. 2 was in the exercise of ordinary care and caution in proceeding as he did, and that the right of navigation being paramount to the right of fishing, he was guilty of no negligence."

The first assignment of error challenges the finding that the ferryboat was not negligently operated at the time of the accident, particularly as regards the change in its course, which brought it on the south side of libelant's boat and into the congested fishing area. It is also urged that it was error to find that the engines of the ferryboat were stopped when it passed over libelant's net, and that the court should have found that the master of the ferryboat was guilty of negligence in failing to heed or hear the danger signal of four short blasts, claimed to have been given by libelant's boat just prior to the accident.

As said by the court in William Wrigley, Jr., Co. v. L. P. Larson, Jr., Co. (D. C.) 5 F.(2d) 731, 741, "A preliminary question arises as to the weight which is to be given to the master's report." If we treat the reference here as a consent reference, then the weight which is to be given to the commissioner's report and findings, which were adopted by the court as its findings, is governed by Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 239, 39 L. Ed. 289, and Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764. In the former case the court said:

"As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusions of law thereon, we think that his finding, so far as it involves questions of fact, is attended by a presumption of correctness similar to that in the case of a finding by a referee, the special verdict of a jury, the findings of a circuit court in a case tried by the court under Revised Statutes, § 649, or in an admiralty cause appealed to this court. In neither of these cases is the finding absolutely conclusive, as if there be no testimony tending to support it; but so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable. Wiscart v. Dauchy, 3 Dall. 321 [1 L. Ed. 619]; Bond v. Brown, 12 How. 254 [13 L. Ed. 977]; Graham v. Bayne, 18 How. 60, 62 [15 L. Ed. 265]; Norris v. Jackson, 9 Wall. 125 [19 L. Ed. 608]; Insurance Co. v. Folsom, 18 Wall. 237, 249 [21 L. Ed. 827]; The Abbotsford, 98 U. S. 440 [25 L. Ed. 168].

"The question of the conclusiveness of findings by a master in chancery under a similar order was directly passed upon in Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355 [32 L. Ed. 764], in which a distinction is drawn between the findings of a master under the usual order to take and report testimony, and his findings when the case is referred to him by consent of parties, as in this

case. While it was held that the court could not, of its motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers, yet, where the parties select and agree upon a special tribunal for the settlement of their controversy, there is no reason why the decision of such tribunal, with respect to the facts, should be treated as of less weight than that of the court itself, where the parties expressly waive a jury, or the law declares that the appellate court shall act upon the finding of a subordinate court. 'Its findings,' said the court, 'like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed, under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise.' As the reference in this case was by consent to find the facts, we think the rule in Kimberly v. Arms applies, and, as there is nothing to show that the findings of fact were unsupported by the evidence, we think they must be treated as conclusive."

Under the peculiar language of the order of reference in the instant case, we have concluded not to treat the finding as unassailable, but as presumptively correct.

"In cases such as this the rule is well settled that the findings of a special master, approved by the trial court, will not be set aside or reversed on appeal except for manifest error in the consideration given to the evidence, or in the application of the law." The Chiquita (C. C. A. 9) 44 F.(2d) 302, 303. That there was no such error here is clear. The findings are supported by the evidence, and the conclusions of law are likewise supported by the findings. This conclusion we have reached after a consideration of the entire case.

As is usual in such cases, the evidence is conflicting on the material issues, and a discussion thereof could serve no useful purpose. Whether the ferry negligently changed its course so as to go directly over libelant's net; whether libelant gave the danger signal of four or more short blasts; whether the same were or should have been heard by those in charge of the ferry; whether the engines of the ferry were stopped when it ran over libelant's net; whether libelant's net should have been observed by those in charge of the ferry—these were all questions upon which the evidence was at variance. An examination of the record relating to these and other questions discussed in the briefs leads us to the conclusion that the ferry was not negligently operated as charged in the libel, and that therefore the commissioner and the District Court properly found in favor of the respondent.

Decree affirmed.