## ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited, v. KERR.

### No. 3898.

Court of Civil Appeals of Texas. Amarillo.
Oct. 26, 1932.

Rehearing Denied Nov. 23, 1932.

Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

L. B. Godwin and Kimbrough & Boyce, all of Amarillo, for appellee.

JACKSON, J.

The appellee instituted this suit in the district court of Potter county, Tex., to recover. of appellant compensation for injuries alleged to have caused total and permanent loss of the use of his right hand while in the employment of Marsh Bros. & Gardiner, Inc., which carried indemnity insurance with appellant.

The appellant pleaded general demurrer and general denial.

No question of jurisdiction or of sufficiency of the pleadings is presented.

In response to special issues submitted by the court, the jury found that the appellee sustained injuries while in the employment of Marsh Bros. & Gardiner, Inc., resulting in the total loss of the use of his right hand for a period of twenty-eight weeks, and that he suffered a partial permanent loss which impaired the use of his right hand 85 per cent.; that the average weekly wage earned by appellee at the time of his injury was $31.73.

In conformity to these findings, judgment was rendered for appellee against the appellant, and the judgment is before us for review.

Appellant presents as error the action of the trial court in excluding, on the objection of appellee, that it would be an invasion of the province of the jury, the testimony of Drs. Howard Puckett, Don S. Marsalis, and W. R. Klingensmith, to the effect that in their opinion the appellee had lost but 25 per cent. of the use of his hand.

The testimony was conflicting as to whether the injury was total or partial, and, if partial, as to the percentage of the loss of the use of the hand. The record discloses that the arm was broken below the elbow; that the ulna bone had united at an angle of about fifteen degrees with an overlap of probably one-half an inch or an inch; that the wrist joint was out of line; that the ulna at the point of fracture had a callus; that there was a limitation of the motion of the fingers and the motion of the wrist joint and forearm; a difference in the temperature of the two hands; that the circulation of the blood in the right hand was abnormal, that the flection of the wrist was from 40 to 50 per cent. normal; and that appellee could not close his

right hand because of the involvement of the tendons of the wrist and hand, and there was some slight limitation in supernation and pronation of the arm. The testimony of the medical experts was sharply controverted as to whether the condition of the hand was improving.

It was admitted that Drs. Puckett, Marsalis, and Klingensmith were practicing physicians and surgeons and duly qualified to testify. The record discloses that Dr. Puckett had treated appellee's arm from the time of the original injury and until he was discharged from the hospital, which was a period of eight weeks; that thereafter Drs. Puckett, Marsalis, and Klingensmith had made a physical examination of the condition of the injured arm, had the same X-rayed, and made a fluoroscopic examination, all for the purpose of determining the extent of the injuries and their effect upon the use of his hand.

"The opinions of physicians and surgeons may be admitted to show the physical condition of a person, the nature of a disease as temporary or permanent, or the effect of disease or of physical injuries upon the body or mind. * * * Such a witness, properly qualified, may testify as to the cause, symptoms, nature and peculiarities of a disease and whether it would be likely to cause death; regarding the probabilities of recovery from the effects of an injury or as to the probable future consequences of an injury, provided the consequences anticipated are such as in the ordinary course of events may reasonably be expected to happen and are not merely speculative or possible." 3 Jones on Evidence (2d Ed.) 2457, § 1345.

"There are no subjects on which the opinions of experts are more commonly sought than those pertaining to health and disease, injury and death. The expert in such cases is a qualified physician and surgeon. Such a witness may not only give his diagnosis of the state of a person's health, but he may likewise state his conclusion as to the cause of the injury or disease. Likewise when the effect of a wound, bodily injury or disease is in question the expert may testify thereto. The witness may also make a prognosis of the physical condition, as well as a diagnosis, being permitted to state his opinion as to the probability of future aggravation or complication, and the likelihood of permanency." 19 Tex. Jur. 56, § 37.

The opinions of medical experts, predicated on given reasons, are admissible to show the extent of a personal injury. G., C. & S. F. Ry. Co. v. Harriett, 80 Tex. 73, 15 S. W. 556; whether or not such injury is permanent or temporary, M., K. & T. Ry. Co. v. Lynch, 40 Tex. Civ. App. 543, 90 S. W. 511; C., R. I. & P. Ry. Co. v. Hiltibrand, 44 Tex. Civ. App. 614, 99 S. W. 707; King v. Insur-

ance Association (Tex. Civ. App.) 8 S.W.(2d) 560; and whether or not the injuries incapacitate a party to work. Texas Employers' Ins. Association v. Shilling (Tex. Civ. App.) 259 S. W. 236; G., H. & H. R. Co. et al. v. Alberti, 47 Tex. Civ. App. 32, 103 S. W. 699. A rather extensive collection of authorities on the subject is found in note to Cross v. Syracuse, 21 Ann. Cas. 328.

 "The proper test of the admissibility of the testimony of experts * * * is not whether or not the opinion of the expert would prove the very fact to be found by the jury. The object of all testimony is to prove the very fact to be found by the jury, and it is not usurpation of the powers of a jury to prove that fact. * * * The rule as to expert testimony is that the subject of inquiry is one of science, skill, or trade, or questions of like kind, about which the expert, by his previous training, habits, or study, has more skill and knowledge than jurors of average intelligence may be presumed generally to possess." International & Great Northern R. Co. v. Mills, 34 Tex. Civ. App. 127, 78 S. W. 11, 12, writ denied. See, also, Fidelity Union Casualty Co. v. Martin (Tex. Civ. App.) 45 S.W.(2d) 682; G., H. & S. A. Ry. Co. v. Stoy, 44 Tex. Civ. App. 448, 99 S. W. 135.

A physician whose qualification is admitted may express his opinion as to the ability of a lady suffering from a nervous condition to perform her household duties. Isaac Benesch & Sons, Inc. v. Ferkler, 153 Md. 680, 139 A. 557.

After a personal examination of the injury of a party's leg and after studying the X-ray picture thereof, a physician may express his opinion that such injuries will impair the use of the leg to from 20 per cent. to 30 per cent. Butler v. Armour Fertilizer Works, 195 N. C. 409, 142 S. E. 483.

"The testimony objected to was that of certain doctors, who were introduced as expert witnesses, and who were allowed to testify as to the percentage of plaintiff's injury. One of the doctors, after testifying as to the nature of the injuries, stated that in his opinion plaintiff would have a total permanent disability of 50 per cent. A number of other physicians were introduced as expert witnesses as to the extent of the injuries. There was no reversible error in the admission of this evidence." Standard Oil Co. of New Jersey v. Sewell (C. C. A.) 37 F.(2d) 230, and authorities cited.

 It is apparently settled in Texas that an injured party, testifying in his own behalf, after describing his injuries, the nature, extent, and effect thereof upon his nervous and physical condition, may give his opinion as to the probable effect of such injuries upon his earning capacity. T. & P. Ry. Co. v. Rasmussen (Tex. Civ. App.) 181 S. W. 212; Weatherford, M. W. & N. W. Ry. Co. v. White, 55 Tex. Civ. App. 32, 118 S. W. 799; G., H. & S. A. Ry. Co. v. Holyfield (Tex. Civ. App.) 91 S. W. 353; Employers' Liability Assurance Corp. v. Williams (Tex. Civ. App.) 293 S. W. 210. The reason for admitting this testimony is to assist the jury in reaching a correct conclusion as to the injuries and their effect.

 It is conceded that the physicians whose testimony was excluded were qualified as experts and were in a position, from having treated appellee and having examined the condition of the broken member, to testify. The extent of the injury was sharply contested, and, the jury having found that the appellee had lost 85 per cent. of the use of his hand by reason of the injury sustained, in our opinion, this testimony was admissible, and the exclusion thereof constitutes reversible error.

The judgment is reversed, and the cause remanded.